IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAFAYETTE CROSSING II LLC,<br><br>　　　　　　　*Plaintiff,*<br><br>v.<br><br>30 WEST PERSHING, LLC *and* TOPGOLF USA PITTSBURGH, LLC,<br><br>　　　　　　　*Defendants.* | Civil Action No. 2:24-cv-1117<br><br>Hon. William S. Stickman IV |

**MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiff Lafayette Crossing II LLC ("Lafayette Crossing") brought an action against Defendants 30 West Pershing, LLC ("Pershing") and Topgolf USA Pittsburgh, LLC ("Topgolf") (collectively "Defendants") seeking a declaratory judgment and damages and alleging tortious interference with contractual relationship. (ECF No. 1). Defendants filed a motion to dismiss. (ECF No. 8). For the following reasons, the motion will be granted and Count I of the complaint will be dismissed without prejudice and Count II will be dismissed with prejudice.

### I.　Factual Background

Lafayette Crossing owns a parcel of land subject to use restrictions in South Fayette Township, Pennsylvania. (ECF No. 1). Topgolf operates a golf and entertainment facility in the same development, which it leases from Pershing. Lafayette Crossing wishes to sell the parcel to Arena Club Pittsburgh ("Arena Club") who intends "to construct and operate a building (containing more than 15,000 square feet of space) that contains a fitness center and offices related to the operation, management and administration of said fitness center, with outdoor tennis and/or

1

pickleball courts." (ECF No. 1, p. 2). On June 14, 2024, Lafayette Crossing entered into a purchase agreement with Arena Club that set forth a closing date "that is presently contemplated to occur on or around September 17, 2024."[1] (*Id.*).

As the Court interprets Lafayette Crossing's allegations, Arena Club is anxious that Defendants might one day assert that it violated the land use restrictions. Lafayette Crossing seeks a letter from Defendants waiving their right to do so. Arena Club conditioned its closing on the parcel upon this letter. (ECF No. 1, pp. 2-3, 8-12). Lafayette Crossing states that it "initiated this litigation, in part, to seek a declaratory judgment that Arena Club Pittsburgh's Intended Use (a) is not a 'family entertainment center' and (b) is not violating the Topgolf Use Restriction that prohibits any 'obnoxious odor, noise, or sounds which can be heard or smelled outside of any Building on the Tracts.'" (ECF No. 11, p. 2 (citing ECF No. 1 at ¶¶ 71-75)).

## II.   STANDARD OF REVIEW

### A. Rule 12(b)(1)

Under Federal Rule of Civil Procedure ("Rule") Rule 12(b)(1), a court must grant a motion to dismiss if there is a lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). "A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial attack does not dispute the facts alleged in the complaint, and therefore essentially applies the same standard as a motion under Rule 12(b)(6). *See Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) ("[A] facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), *i.e.*, construing the alleged facts in favor of the nonmoving party.").

---

[1] Under the terms of the purchase agreement, Lafayette Crossing has the right to extend the closing by ninety days. (ECF No. 11, p. 2).

A court must therefore "only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Id.* (internal quotations omitted).

"A motion to dismiss for want of standing is ... properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). A court lacks jurisdiction if a plaintiff cannot establish Article III standing. *See Davis*, 824 F.3d at 346 ("Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed.").

B. Rule 12(b)(6)

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although a court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the

allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

### III.    ANALYSIS

**A. Count I will be dismissed because the asserted claim is not ripe.**

Count I of Lafayette Crossing's complaint seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202 as to Arena Club and Topgolf use restrictions. Specifically, it seeks a declaratory judgment that Arena Club's Intended Use (1) is not a "family entertainment center" and (2) is not in violation of the Topgolf Use Restriction that prohibits any "obnoxious odor, noise, or sound which can be heard or smelled outside of any Building on Tracts." (ECF No. 1, ¶¶ 71, 72).

While "[t]he contours of the ripeness doctrine are particularly difficult to define with precision when a party seeks a declaratory judgment," a declaratory judgment action is ripe for adjudication if: (1) the parties' interests are sufficiently "adverse"; (2) the judgment of the court will be "conclusive"; and (3) that judgment will have "practical utility." *Wayne Land & Mineral Grp. LLC v. Delaware River Basin Comm'n*, 894 F.3d 509, 522 (3d Cir. 2018). This is otherwise known as the "*Step-Saver*" test for ripeness in declaratory judgment actions brought in courts in the Third Circuit.[2] A defect in one or two of the categories may be sufficient to find that a

---

[2] *Step-Saver Data Systems, Inc. v. Wyse Technology*, 912 F.2d 643, 647-50 (3d Cir. 1990).

4

declaratory judgment claim is not ripe for adjudication. *AXIS Ins. Co. v. PNC Fin. Services Group, Inc.*, 135 F. Supp. 3d 321, 325 (W.D. Pa. 2015).

1) <u>Adversity of Interest</u>

As to the first element for determination of ripeness, the defendant must be so situated that the parties have adverse legal interests for there to be an actual controversy. *Step-Saver*, 912 F.2d at 648. Further, "a plaintiff need not suffer a *completed* harm to establish adversity of interest . . . but to protect against a feared future event, a plaintiff must demonstrate that the probability of that future event occurring is real and substantial, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *AXIS Ins. Co.*, 135 F. Supp. 3d at 329 (citing *Armstrong World Indus., Inc. by Wolfson v. Adams*, 961 F.2d 405, 412 (3d Cir. 1992)). As such, a "potential harm that is contingent" on a future event occurring will not likely satisfy this prong of the ripeness test. *Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Eng'rs, Loc. Union No. 66*, 580 F.3d 185, 190 (3d Cir. 2009).

Here, as Defendants argue, Lafayette Crossing has not demonstrated sufficient immediacy in either the complaint or any of its subsequent filings. In fact, Lafayette Crossing admits in the complaint that at no time have Defendants taken the position that they believe Arena Club's Intended Use of Purchaser's Parcel would in any manner violate any of the Topgolf Use Restrictions. (ECF No. 1, ¶ 57). Lafayette Crossing also attempts to argue that it alleges immediate harm as a result of Defendants' actions rather than potential future harm. (ECF No. 19, p. 11). However, the Court finds this argument to be unavailing. The declaration Lafayette Crossing seeks clearly asks the Court to rule that the yet-to-be-built Arena Club facility will not violate Topgolf's Intended Use Restrictions. (ECF No. 1, ¶¶ 71-74). As Defendants argued in their motion to dismiss, the harm Lafayette Crossing alleges is unequivocally contingent on future

5

events; Arena Club's construction and operation violating the Topgolf Use Restrictions and Defendants enforcing their rights, which may or may not occur. (ECF No. 9, p. 12). While Lafayette Crossing contends that Arena Club can terminate the purchase agreement without execution of the Topgolf Waiver, such a decision would not be the fault of Defendants, nor is there legitimate adversity as to the actual declaration Lafayette Crossing requested. (ECF No. 19, p. 12); (ECF No. 20, p.5). The Court holds that Lafayette Crossing is unable to meet the adversity requirement of the ripeness test.

2) Conclusiveness of the Judgment

As to the second element of the *Step-Saver* test, the conclusiveness requirement, the Court must examine whether the parties' rights will definitively be decided by a declaratory judgment and the extent to which the case rests upon a sufficiently factual foundation. *AXIS*, 135 F. Supp. 3d at 327. This element further addresses the extent to which additional factual case development would facilitate a decision to avoid the issuance of advisory opinions, or whether the question at hand is predominantly legal. *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 344 (3d Cir. 2001) (citing *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1155 (3d Cir. 1995)). The contest must be based upon a "real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law should be upon a hypothetical state of facts." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241 (1937). Absent a concrete set of facts, the Court cannot engage in its fact-finding role and declare the parties' rights based on hypothetical facts. *Travelers*, 72 F.3d at 1155.

Lafayette Crossing states in its brief in opposition that it "has not alleged, nor does it suggest that, there is any hypothetical scenario here. Determining the rights of Plaintiff and Defendants as it relates to the Topgolf Waiver and Arena Club Pittsburgh's Intended Use will

6

certainly end the controversy." (ECF No. 19, p. 13). This argument comes up short. Even if the Court were to issue the declaratory judgment that Lafayette Crossing has petitioned for – i.e., that Arena Club's Intended Use does not run afoul of the Topgolf Use Restrictions; the Arena Club could end up violating the restrictions when it is built in the future. Since Arena Club has yet to be built and begin operations, and the Court is incapable of speculating whether a future, hypothetical facility violates a present set of restrictions, a declaration rendered by the Court cannot, facially, be conclusive. Contrary to Lafayette Crossing's statement in the complaint, the Court finds that a declaratory judgment is neither necessary nor proper to set forth and determine the rights, obligation, and liabilities that exist between the parties. (ECF No. 1, ¶ 75). The Court holds that the second ripeness prong is unsatisfied.

3) Utility of the Judgment

As to the third element of the *Step-Saver* test, the practicality or utility requirement, the Court must consider the extent to which a declaratory judgment would be useful to the parties in the case. This analysis addresses whether a declaratory judgment will likely affect the parties' plan of action. *Armstrong*, 961 F.2d at 423. Even if a declaratory judgment would clarify the parties' legal rights, it should ordinarily not be granted unless "the parties' plans of actions are likely to be affected by a declaratory judgment." *Id.* The Court may consider the hardship to the parties of withholding judgment under this factor. *NE Hub Partners*, 239 F.3d at 344-45. Further, the Supreme Court has not considered litigation cost-saving measures, alone, to be sufficient by itself to justify review in a case that would otherwise be unripe. *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 735 (1998).

A holding which grants the declaratory judgment that Lafayette Crossing seeks, establishing that Arena Club does not run afoul of the Topgolf restrictions, would obviously be

useful to Lafayette Crossing as it would be spared the difficulty of facing the reality that its project does not satisfy the property restrictions. Nearly any judicial judgment affecting a party's rights is useful as a form of risk reduction, to some degree, of future uncertainty. *AXIS*, 135 F. Supp. 3d at 329. "However, to render a requested declaratory judgment ripe – and to make the utility prong mean anything – the action must achieve more than that minimum." *Id.* Thus, creating potential ease of litigation for Lafayette Crossing does not render this matter ripe for adjudication. Additionally, neither Lafayette Crossing nor Defendants will suffer sufficient hardship if the Court withholds judgment because the current situation is based entirely on a hypothetical situation. If the Court were to find in Lafayette Crossing's favor, Defendants' future plan of action could presumably be thwarted to the extent that they would not be able to find that Arena Club violates any of the restrictions. However, this would assume that Defendants' future plan is to halt construction which cannot reasonably be proven. If the Court finds in Defendants' favor, the impact would have little to no utility because Lafayette Crossing would only continue construction of the project with the same possibility that Defendants find violations, which may occur even if the Court withholds judgment.

For these reasons, the Court finds that Lafayette Crossing's declaratory judgment claim is not ripe for adjudication and must be dismissed as a matter of law. This dismissal will be without prejudice.

**B. Count II will be dismissed because it does not assert a plausible claim for tortious interference.**

Count II of the complaint alleges tortious interference with contractual relationship and seeks damages. Lafayette Crossing claims that Defendants each had knowledge of the purchase agreement and delivery of the Topgolf Waiver as a requirement for closing, and that Defendants

continue to interfere with its ability to close the pending transaction with Arena Club by not signing the Topgolf Waiver. (ECF No. 1, ¶¶ 78, 79).

Pennsylvania has adopted Section 766 of the Restatement (Second) of Torts which sets out the tort of intentional interference with an existing contract as follows: "One who intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the third person's failure to perform the contract." *Adler, Barish, Daniels, Levin & Creskoff v. Epstein*, 393 A.2d 1175, 1183 (Pa. 1978); RESTATEMENT (SECOND) OF TORTS § 766 (AM. L. INST. 1965). Under this Restatement language, a defendant must have interfered with contractual performance by intentionally and improperly acting, or failing to act where a duty to do so existed. *Buczek v. First Nat. Bank of Mifflintown*, 531 A.2d 112, 1124 (Pa. Super. 1987). The failure to bring an enforcement action against "alleged infringers" is not an "act" that can sustain a tortious interference claim. *PeriRx, Inc. v Regents of University of California*, No. 2:20-CV-02212-JDW, 2020 WL 12833950 (E.D. Pa. Dec 3, 2020), aff'd sub nom. *PeriRx, Inc. v. Regents Univ. of California*, No. 22-1245, 2023 WL 1267173 (3d Cir. Jan. 31, 2023).

Lafayette Crossing alleges that Defendants are engaging in improper conduct by extorting it into paying money it does not owe in exchange for the signed Topgolf Waiver. (ECF No. 19, p. 7). However, the complaint in no way alleges that Defendants' request for reimbursement from Lafayette Crossing was specifically intended to harm the existing relationship or prevent a prospective relation from occurring. It alleges only that any obligations initially owed to Defendants by Newbury Development Associates, LP ("NDALP") are between Defendants and NDALP, and that the demand for money is untenable. (ECF No. 1, ¶¶ 52, 60). Further, as

Defendants properly raised, an implied duty of good faith can exist only when there is privity of contract or a confidential or fiduciary relationship between the parties.[3] Here, the contractual relationship exists between Lafayette Crossing and Arena Club Pittsburgh. Defendants are not a party to that relationship. Therefore, Defendants do not have a good faith duty to act. Lafayette Crossing created its own harm by agreeing to a condition to closing in the purchase agreement without knowing if it could meet the condition, then sat on its hands. This was due to no fault on the part of the Defendants. No plausible allegations exist that Defendants intentionally or unlawfully interfered with contractual relations between Lafayette Crossing and Arena Club. Defendants had no legal duty to sign the waiver to appease Lafayette Crossing who fears potential, future harm. Count II will be dismissed with prejudice as Lafayette Crossing has failed to state a plausible claim for relief.

### IV.  CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion to dismiss. Orders of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

___1/27/25_____
Date

---

[3] *See Southeastern Pennsylvania Transp. Authority v. Holmes*, 835 A.2d 851, 859 (Pa. Commw. Ct. 2003)

10